Lee **DYKES** et al., Petitioners,

v.

**CITY OF HOUSTON**, Texas. Respondent.

No. A–11250.

Supreme Court of Texas.

July 20, 1966.

Rehearing Denied Oct. 5, 1966.

Theodore R. Kirchheimer and Ed S. Atkinson, Houston, for petitioners.

John Wildenthal, Jr., City Atty., Houston, Homer T. Bouldin, Asst. City Atty., for respondent.

SMITH, Justice.

In this suit, Lee Dykes and Robinwood Lodge, Inc., sought a mandatory injunction against the City of Houston, Texas, commanding it to remove a barricade erected by the City on and across Buckingham Drive, a street located within the boundaries of the City of Houston. E. P. Dee and a number of other resident citizens of the City intervened alleging that they were interested in the subject matter of the suit. These intervenors aligned themselves with the City. However, no further reference will be made to the intervenors since they did not appeal from an adverse judgment rendered by the trial court. For convenience, Mr. Dykes and Robinwood Lodge, Inc., will hereinafter be referred to as plaintiffs and the defendant as the City. Trial was to a jury. At the close of the evidence and after all parties had rested, the trial court withdrew the cause from the jury[1] and rendered judgment that a "mandatory injunction issue commanding the City of Houston to remove the barricade erected by the City of Houston on Buckingham Drive between Kennilworth Drive and Katy Road and that plaintiffs have such writs as are necessary to enforce said judgment."

The City superseded the trial court's judgment and timely filed its notice of appeal from the judgment to the Court of Civil Appeals for the First Supreme Judicial District of Texas, sitting at Houston, Texas. This Court, in the exercise of its authority to equalize the dockets of the several Courts of Civil Appeals of the Supreme Judicial Districts of Texas, transferred the cause to the Court of Civil Appeals for the Sixth Supreme Judicial District of Texas, sitting at Texarkana, Texas. That Court reversed the judgment of the trial court and rendered judgment that the plaintiffs "take nothing by their suit." 399 S.W.2d 825. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

Buckingham Drive is within what is known as Bayou Woods, Section 3, a residential subdivision situated within the City of Houston, and is one of the streets dedicated for public use in said subdivision, as shown by the Map and Deed Records of Harris County. It is undisputed that the City of Houston properly annexed the Bayou Woods subdivision into the City in 1949 and that the portion of Buckingham Drive involved herein was at all times unimproved, having never been opened by the

---

1. Where the trial court withdraws a case from the jury and renders judgment there can be no implied findings of fact, under Rule 296, Texas Rules of Civil Procedure, in favor of the judgment.

City.[2] The record reveals that as early as 1947, and at all times subsequent thereto, the part of Buckingham Drive here involved was heavily wooded to such an extent that automobiles could not get through the trees and underbrush. The plaintiff, Dykes, testified that it was his desire that the City, through its Council, open the land and improve it for street purposes in accordance with its dedicated purpose. He went before the Council a number of times requesting such action by the City; hearings were held and witnesses were heard, but the City, within its discretion, refused to open the street. Dykes, having failed in his appeal to the City, then hired a bulldozer and began clearing the land of trees and underbrush and grading it himself. Thereafter, on August 5, 1962, the City erected a wooden barricade deemed necessary to prevent traffic from proceeding into this area while under the impression that it was a continuation of the paved street itself and safe for travel. This barricade was burned by Mr. Dykes. The City then erected a metal barricade which Mr. Dykes, on May 22, 1964, attempted to dismantle with a blowtorch. He was restrained by the police from accomplishing his purpose on this occasion.

The City recognizes that it did not, before erecting a barricade, comply with the provisions of Article 4646a,[3] Vernon's Annotated Texas Civil Statutes, which requires that where the rights of abutting owners are involved, the City must, before

3. "Art. 4646a. Prohibiting injunction against closing streets

"No injunction shall be granted to stay or prevent the vacating, abandonment or closing, by the City Council or governing body of any incorporated city of this State, of any street or alley in any such incorporated city of this State, except at the suit of the owner or lessee of real property actually abutting on that part of such street or alley actually vacated, abandoned or closed, and then only in the event that the damages of said owner or lessee shall not have been released or shall not have been ascertained and paid in a condemnation suit by such city.

vacating, abandoning, or closing a street, obtain a release or condemn the property to be effected. The City recognizes that it has the duty to maintain all streets within the City and keep them open and free of obstruction, and that a city, under normal circumstances, can close a street only in the public interest. However, under the circumstances of this case, the City contends that it was not trying to close Buckingham Drive by erecting the barricade because in fact this portion of Buckingham Drive had never been opened; instead, the City contends that the undisputed facts show that Mr. Dykes, in violation of State law and a valid City ordinance, created a dangerous condition by attempting to open Buckingham Drive without the knowledge or consent of the City. The City contends that, in consequence of Mr. Dykes' illegal action, the erection of the barricade was necessary to secure adequate protection for the traveling public.

Plaintiffs bring forward the argument that the City cannot barricade a dedicated street, even though it has never been officially opened, thereby depriving abutting landowners of their property right in the dedicated street and precluding full use of the street as a means of access to abutting property, without first complying with the provisions of Article 4646a, supra.

At the trial one witness testified that he was familiar with this area of Buckingham Drive; that he has owned property in the area since 1947; that the area was heavily wooded with "thick undergrowth"; that the dedicated street was "filled with undergrowth and saplings"; that in 1947 there was no roadway "through there at all"; that it was impossible for an automobile to "go through that area"; that from 1947 and "up until Mr. Dykes took a bulldozer through that area" (1962), it was impossible for an automobile "to go through." The witness

testified, without objection, that Mr. Dykes created a hazardous condition in that he did some excavating on the dedicated street; some of the trees were cut, and some of the undergrowth was cut away while some was left standing. A paved street ended where this work by Lee Dykes commenced. The witness testified that Dykes left the dedicated street in such condition that it was dangerous for use by the traveling public. The witness was shown a picture which had been taken of the area after Dykes had personally attempted to open the street. The witness was then asked:

"Q. And, in other words, this would be where the unsuspecting public would go if it weren't for the barricade, and would just hit this part right in here?

"A. That's true.

"Q. Which would make it dangerous?

"A. Yes.

"Q. All right. Of course you and I know this exists, but if, as I say, a stranger to the neighborhood would come along, well, it might look just something like this to them and they might not realize that the pavement ended there, is that correct?

"A. Yes, ma'am."

In answer to a question as to the condition of the area after "Mr. Dykes ran the bulldozer through it," the witness said:

"It would appear to an oncoming motorist that there would be an opening, because prior to this incident of bulldozing the area there was an impenetrable screen of tall trees and underbrush and saplings which screened off Katy. It was not possible to see Cameron Iron works or any of the traffic on that road. Now with the underbrush gone, sir, it would

"Sec. 2. Provided that any person, who under existing laws has the right to enjoin a city from vacating, abandoning or closing any street or alley of such city and whose right to such injunction is denied by this Act, shall have the right to an action for damages for any injury that he may sustain by reason of the vacating, abandoning or closing of any street or alley by such city."

appear that the street is open though it is not, * * * and the barricade is necessary for the unsuspecting public."

It is well settled that "if one owning land, exhibit a map of it, on which a street is defined, though not as yet opened, and building lots be sold by him, with reference to a front or rear on that street, this operates as an immediate dedication of the street; and the purchasers of lots have a right to have the street thrown open forever." Oswald v. Grenet, 22 Tex. 94, 100 (1858). "[T]he individual purchasers thereunder acquire an easement in the land designated as an alley or street, and such alley or street becomes charged with the servitude incident to such easement. Such purchasers have, by virtue of the easement thus acquired, the right to have such street or alley kept open, whether the public has or not accepted the dedication by some acts of user." Wolf v. Brass, 72 Tex. 133, 12 S.W. 159, 160 (1888); Spencer v. Levy, 173 S.W. 550 (Tex.Civ.App. 1915, wr. ref). The right acquired by the purchaser is a private easement over those areas set aside and designated as public ways, and this right attaches immediately upon his purchase of the property. See Drye v. Eagle Rock Ranch, Inc., 364 S.W.2d 196 (Tex. Sup. 1962); Dallas Cotton Mills v. Industrial Co., 296 S.W. 503 (Tex.Com.App. 1927); City of Corsicana v. Zorn, 97 Tex. 317, 322, 78 S.W. 924 (1904); Eidelbach v. Davis, 99 S.W.2d 1067, 1072 (Tex.Civ.App. 1936, err. dism.); 28 C.J.S. Easements § 39. Therefore, when the plaintiffs purchased their lots with reference to the subdivision plat, they immediately acquired private rights of easement over the streets shown on such plat as abutting their land whether or not such streets were ever accepted or opened by the City, as representative of the public. See 2 Thompson, Real Property, § 494, p. 71. We have held that these rights exist even though the City closes the public street. Dallas Cotton Mills v. Industrial Co., supra. However, in the Dallas case, we were not called upon to balance the city's police power with the private easement rights because the city there expressed its acquiescence in the continued exercise of such rights.

While the plaintiffs do have easement rights, those rights are subject to reasonable regulation. Under the provisions of Section 16, of Article 1175, the Legislature has granted to home-rule cities the "exclusive dominion, control, and jurisdiction in, over and under the public streets, avenues, alleys, highways and boulevards, and public grounds of such city * * *." Under Section 17 of said Article, a city has the power "[t]o open, extend, straighten, widen any public street, alley, avenue or boulevard * * *." and Section 18 grants the power to vacate and close streets when such action is in the best interest of the public. This last power is restricted by Article 4646a, supra, which allows abutting owners to enjoin such action if they have not released any claim for damages they might have or have not been paid compensation through a condemnation proceeding. Therefore, it may be seen that a city has the general power to regulate the use of the streets within its territory and the general duty to protect the public from hazards therein and to promote the public convenience. Town of Ascarate v. Villalobos, 148 Tex. 254, 223 S.W.2d 945 (1949). A city has broad discretion to enact ordinances for such purposes, and so long as such ordinances are not unreasonable and arbitrary, and are not violative of the Constitution and the laws of this State, they will be held valid. Town of Ascarate v. Villalobos, supra; Houston & T.C.Ry. Co. v. City of Dallas, 98 Tex. 396, 84 S.W. 648, 70 L.R.A. 850 (1905). The rule was quoted with approval by this Court in the case of Halsell v. Ferguson, 109 Tex. 144, 202 S.W. 317, 321 (1918):

" 'Since the very foundation of the police power is control of private interest for the public welfare, a statute or ordinance is not rendered unconstitutional by the mere fact that private rights of person or property are subject to restraint or

that loss will result to individuals from its enforcement.' "

■ In the present case we are presented with a conflict between a private interest and the public welfare, insofar as plaintiff Dykes has attempted to acomplish, by self-help, that which he had been unable to accomplish before the City Council. The opening of a street, with its commensurate demands upon the City for maintenance and supervision, is within the discretion of a home rule city, such as Houston. An individual, even if he is an abutting landowner, does not have the right to determine when a street will be opened by the public; such right is vested solely in the governing body of the City. Without question, it is clear that here the City of Houston has only an easement for street purposes in the land involved, and the abutting owners, such as the plaintiffs, own the fee simple title to the center of the street; it is, nevertheless, settled that the rights and title of abutting owners are subject to the valid police power of the City of Houston. See Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475, 478 (1934); City of San Antonio v. Pigeonhole Parking of Texas, Inc., 158 Tex. 318, 311 S.W.2d 218, 73 A.L.R.2d 640 (1958). The power to open dedicated streets which have never been opened was held to be vested in the City by this Court in the early case of Gilder v. City of Brenham, 67 Tex. 345, 3 S.W. 309 (1887). The general rule was stated in 1 Elliott, Roads and Streets, 4th Edition, Sec. 129, p. 151:

"An owner who makes a plan on which spaces are left indicating the dedication of roads or streets, and sells lots with reference to the plat, can not recall his dedication, for he leaves the streets to be opened by the proper local authorities at such time as the public interest may require, and of this the local authorities are the judges. It is for them to determine when the public interests demand that the ways as laid out on the plat shall be taken in charge and improved for public use, * * *."

■ After the City Council refused to act with regard to opening, closing, or abandoning this portion of Buckingham Drive, Mr. Dykes was apparently convinced that he had no alternative except to resort to opening the street himself, and, therefore, took such action without the knowledge or consent of the City or its officers. We do not share this conviction. Equity furnishes a remedy to the landowner which may achieve an harmonious balance between the authority of the City over its streets and the landowner's right to a full and beneficial use of the private easement.

■ The 1958 Code of Ordinances of the City of Houston contains an ordinance, which we view as a reasonable and necessary restraint upon private rights in order to apprise the City of improvements and construction of potential public concern of which it would otherwise be unaware. The ordinance reads:

"Sec. 36–2 Consent of council required.

"It shall not be lawful for any person to lay out, survey, grade, construct, or run any road or railway, or make any other public improvement within, through or over any street, or public or private grounds in any portion of the city, or build, erect, or construct across Buffalo Bayou any bridge without the consent of the city council first had and obtained. Each day that such unlawful work progresses, or such unlawful structure remains, shall be held to be a separate offense. (Code 1942, S 2002.)"

Violation of this ordinance, and conviction thereof, carries with it a penalty. The remedy of the plaintiffs in the situation with which they are confronted is to seek the consent of the City Council to improve and open the easement in a reasonable manner so as to obtain the benefit of their property right while protecting the members of the public who would inevitably use such an open way. If the City arbitrarily or unreasonably refuses to grant such consent, ·

then proceedings for writ of mandamus may be brought to compel such consent. While many of our decisions declare, without qualification or exception, that mandamus will not issue to compel the performance of an act which involves an exercise of discretion or judgment, this rule is not without limitation, and the writ may issue in a proper case to correct a clear abuse of discretion. Crane v. Tunks, 160 Tex. 182, 328 S.W.2d 434 (1959); Womack v. Berry, 156 Tex. 44, 291 S.W.2d 677 (1956); City of Houston v. Adams, 154 Tex. 448, 279 S.W.2d 308 (1955); Stakes v. Rogers, 139 Tex. 650, 165 S.W.2d 81 (1942); City of San Antonio v. Zogheib, 129 Tex. 141, 101 S.W.2d 539 (1937). This is especially so where there is no adequate remedy at law.

As we view the evidence in this record, it is conclusively established that the area of Houston in which the Bayou Woods subdivision is located is a thoroughly developed suburban area, more or less thickly populated, which has been an integral part of the City for a number of years, as opposed to an area which has been annexed to the City relatively recently, the streets of which are not in wide use or great demand by reason of population or development. Furthermore, as discussed earlier in this opinion, it is well settled that the plaintiffs have a property right in and to the portion of Buckingham Drive in dispute; this right is entitled to consideration by the City. If the City wants the street closed, it may take such action under Article 4646a, supra. It has not chosen to do so. We do not have the question before us as to whether this would constitute a "taking" of property so as to require compensation. While Dykes, as a matter of common law, had the right to improve the street, he must do so, as pointed out above, in compliance with the City's ordinances. If the City refuses his requests to personally improve the easement, his remedy will be to preserve his rights in a proper legal forum rather than by "self-help"; if Dykes persists in improving the street without a permit, the City's remedy is by injunction.

■ Meanwhile, however, the City's proof is that citizens may be injured by falling or driving into holes or other hazards created by Dykes. It will be assumed that the City may erect temporary signs or local barriers to warn and protect the public from injury. As stated in 2 Elliott, Roads and Streets, 4th Edition, Section 801, pp. 1027–29:

"The responsibility of the authorities for the condition of a highway begins when they have actually opened it for public use * * * and where it is not opened for public use, and the public are properly notified of that fact by barriers, or other means, there is no liability on the part of the corporation to a traveler injured on the road * * *. Whenever the authorities throw a highway open for travel, or invite or induce travel thereon by any other means, the duty to keep it in repair arises, and they will be liable, in a proper case, for failing to perform that duty. This is also true, as a rule, where a city tacitly permits a thoroughfare to be used as a public street, although it was not originally laid out or established under city authority."

The reasonableness and necessity of the erection of signs or barricades by the City are not before us. Suffice it to say that any device erected must be for the purpose of protecting people from injury and may not be erected for the purpose of preventing the plaintiffs from at least walking in and along the easement.

■ We have therefore concluded that the plaintiffs have easements and are entitled to make reasonable use of those easements. The City has completely barred this use by the erection of the permanent, metal barricade. The trial court correctly held that this barricade must be removed.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court commanding the City to remove the permanent barricade is affirmed. However, this judgment is without prejudice

to the right of the City to erect any local barriers, signs, or other devices which are reasonably necessary to protect the public from danger and which do not interfere with plaintiffs' use of their private easements.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

## CONCURRING OPINION

POPE, Justice.

Lee Dykes and Robinwood Lodge, Inc., sought a mandatory injunction for the removal by the City of Houston of a permanent barricade which some of its employees erected across Buckingham Drive. Dykes and Robinwood are owners of lots which abut upon Buckingwood Drive and they purchased their property with relation to a platted subdivision in Harris County. After the recording of the plat and the dedication of the streets, City of Houston annexed the subdivision.

The majority opinion confuses peculiar rights in private easements with the general public's rights in closing and opening streets. Dykes and Robinwood have rights as purchasers of the lots with reference to the plat which are not shared by the public at large. Drye v. Eagle Rock Ranch, Inc., 364 S.W.2d 196 (Tex.Sup.1962); City of Corsicana v. Zorn, 97 Tex. 317, 322, 78 S.W. 924 (1904); Dallas Cotton Mills v. Industrial Co., 296 S.W. 503 (Tex.Comm. App.1927); 23 Am.Jur.2d Dedication § 59.65. The general rule is summarized in 26 C.J.S. Dedication § 52:

"*    *    *    *    *    *

"Purchasers of property with reference to a plat showing part of the platted property as dedicated to streets and other public uses are entitled to rely on the dedication, and are entitled to the benefits thereof, even though it may still be incomplete as to the general public, unless the easement has been surrendered in some legally recognized manner. While both the public and the purchasers are affected by the dedication, their rights are not always the same. The rights in dedicated streets acquired by a purchaser are private contract rights, and are not affected by the failure of the municipality to act on the dedication. The purchasers are entitled to the free use of all such streets and alleys necessary to the complete enjoyment of the lots purchased by them, and where the streets have not been accepted by the municipality, may do whatever is necessary to put them in condition for use. *    *    *"

The Court's opinion implies that once the present barricade is removed, other barricades may legally be erected which limit Dykes' and Robinwood's use of their easement to a footpath. This question is not before the Court and is obiter dictum. We should not now hold, either expressly or by implication, that the City can legally barricade the easement to the extent of limiting its use to a footpath. Ordinarily one who buys property abutting on a platted and dedicated street has a legal right to make such use of his private easement as is reasonably necessary to its full enjoyment. 21 Tex.Jur.2d 165 Easements, § 37. In this day of almost universal travel by automobile, it would seem that vehicular use of the easement would be reasonably necessary to its full enjoyment.

I do not say that Dykes and Robinwood have a legal right to make further improvements without obtaining a permit as required by Section 36-a of the 1958 Code of Ordinances of the City of Houston, nor express an opinion whether such permit should be issued voluntarily or by judicial action.

The City of Houston did not act by force of any resolution or ordinance. It was without power to deprive Dykes and Robinwood of their rights in their private easement to use the street, and the judgment of the trial court should be affirmed.

CALVERT, C. J., and WALKER, J., join in this opinion.