Winston REAGAN, County Judge of Henderson County, Texas, in his Official Capacity, Appellant,

v.

Harold R. BECK et al., Appellees.

No. 604.

Court of Civil Appeals of Texas, Tyler.

Dec. 9, 1971.

Rehearing Denied Jan. 6, 1972.

William H. Kugle, Jr., Kugle & Douglas, Athens, for appellant.

Jack Y. Hardee, Fields, Fields & Hardee, Athens, for appellees.

PER CURIAM.

This is an appeal from a writ of mandamus.

On May 11, 1971, a group of citizens living in Henderson County filed a petition with the County Judge seeking to incorporate an area to be known as Payne Springs under the provisions of Articles 1133, 1134 and 1136, Vernon's Annotated Texas Statutes.[1] After a hearing, the County Judge refused to call an election and filed an order setting forth his reasons for denying the petition for election. Appellees duly filed their application for writ of mandamus in the District Court. After a hearing, the District Judge issued a writ of mandamus ordering appellant to call the incorporation election. Appellant, Winston Reagan, acting in his official capacity as County Judge, duly perfected this appeal.

We affirm the judgment of the trial court.

The County Judge filed findings of fact in which he found: (1) that a petition, containing the signatures of more than twenty resident qualified voters, who resided within the proposed area, was duly and regularly filed requesting an election, (2) that more than twenty qualified resident voters signed the petition seeking the election for the area known as Payne Springs, Texas, (3) that more than two hundred inhabitants reside within the proposed area of incorporation, (4) that a surveyor's certified field notes showing less than two square miles was filed, (5) that the proposed area of incorporation contained less than two square miles, and (6) that a plat designating the proposed area of incorporation was filed with the petition. In his order refusing to call the election, the County Judge stated that he denied the petition for election because (1) the area to be incorporated was not, in fact, a town because it did not consist of a more or less concentrated group of houses and private and public buildings, and (2) there was territory included in the boundaries of the proposed township which was not intended to be used for town purposes.

Upon the hearing of the application for mandamus in the District Court, appellee, Harold R. Beck, testified that there were eleven businesses currently operating in the proposed area of incorporation. Mr. Beck further testified that in 1969 there were only approximately three or four businesses in the same area. He further testified that the population of the area had more than doubled in the past two years. He further testified that numerous subdivisions and businesses for the area were being contemplated. Mr. Beck further stated that one of the hoped-for benefits of incorporation would be fire protection through a township fire department. Police protection was also stated to be a prime desire of the incorporators. Vandal-

---

1. The pertinent parts of the statutes are as follows:

"When a town or village contains more than two hundred (200) and less than ten thousand (10,000) inhabitants, it may be incorporated as a town or village in the manner prescribed in Chapter 11, Title 28, of the Revised Civil Statutes of Texas, 1925, and all amendments thereto." Article 1133, Vernon's Ann. Tex.Civ.St.

"If the inhabitants of such town or village desire to be so incorporated, at least twenty residents thereof, who would be qualified voters under the provisions of this chapter, shall file an application for that purpose in the office of the county judge of the county in which the town or village is situated, stating the boundaries of the proposed town or village, the name by which it is to be known when incorporated, and accompany the same with a plat of the proposed town or village including therein no territory except that which is intended to be used for strictly town purposes. * * *" Article 1134, V.A.T.S.

"If satisfactory proof is made that the town or village contains the requisite number of inhabitants, the county judge shall make an order for holding an election on a day therein stated and at a place designated within the town or village for the purpose of submitting the question to a vote of the people. He shall appoint an officer to preside at the election, who shall select two judges and two clerks to assist in holding it. After a previous notice of ten days, by posting advertisement thereof at three public places in the town or village, the election shall be held in the manner prescribed for holding elections in other cases." Article 1136, V.A.T.S.

ism, Mr. Beck stated, was a problem in the area, and that police protection was definitely needed. Mr. Beck also testified that with incorporation, the inhabitants of the area would be able to control building standards in the area through the issuance of building permits. Mr. Beck further testified that there were several resident subdivisions in the proposed incorporated area. It was his testimony that the subdivisions were pretty well concentrated.

Appellant offered no evidence. There is no direct evidence that the area proposed to be incorporated contained any land other than that intended to be used for town purposes. According to the plat accompanying the petition for incorporation, the area to be incorporated covers approximately 200 feet on both sides of a county road for a distance of approximately eight miles and lies on a peninsula extending into a large water reservoir known as Cedar Creek Lake. Both the east and west ends of the proposed area for incorporation are adjacent to the lake. Where proposed township borders on the lake, the area flares out so as to encompass several hundred feet of the shoreline. As to the dogleg in the proposed incorporation area which follows the highway, it was Beck's testimony that that area was pretty well dotted with businesses and houses up and down the area. Mr. Beck further testified that it was an area suitable for incorporation.

By his sole and only point of error appellant urges that the trial court erred in issuing the writ of mandamus for the reason that he, as County Judge, was exercising discretionary powers granted him by the statutes to deny the petition for election.

The record shows, without dispute, that the incorporators of the proposed township complied with the statute in filing a petition and attaching the surveyor's plat showing the area to be incorporated contained less than two square miles. The County Judge so found. As a result of a

hearing, he determined that the incorporators produced satisfactory proof showing that the area contained the requisite number of 200 inhabitants. In making this finding, the County Judge found that the incorporators had discharged their burden of proof in following the provisions of the statute. Instead of putting the election process in motion, he proceeded to make additional findings and denied the petition because he further found that (1) there was certain territory included in the proposed township which was not intended to be used for town purposes and (2) that no town or village, in fact, existed. The sole and only question raised in this appeal is whether or not the foregoing statute vests the County Judge with discretionary power to determine the foregoing enumerated factual propositions.

Article 1136, supra, makes it clear that the legislature intended to delegate the discretionary power upon the County Judge to determine whether or not the proposed town or village contains the requisite number of inhabitants. The determination of such question involves a fact question solely within the discretion of the County Judge and his ruling is final in the absence of fraud. Scarborough v. Eubank, 93 Tex. 106, 53 S.W. 573; Thompson v. State ex rel. Donley, 23 Tex.Civ. App. 370, 56 S.W. 603; Wolf v. Young, 277 S.W.2d 744 (Tex.Civ.App., San Antonio, 1955, writ ref., n. r. e.); 39 Tex.Jur.2d p. 376, sec. 16. That the County Judge has this power is conceded by all parties. Appellees take the position that constitutes the extent of his power and that he is not authorized to make any further factual findings. Appellant argues that the statutes authorized him, as County Judge, to exercise discretion in making any factual finding mentioned in connection with the proposed incorporation of any town or village. After a careful review of the statutes, we have concluded that the statutes fail to delegate upon the County Judge legislative authority to determine whether the incorporators included territory in the proposed

township which was not intended to be used for town purposes and fail to delegate him any authority to determine that no town or village, in fact, existed.

In the case of Perkins v. Ingalsbe, 162 Tex. 456, 347 S.W.2d 926, the Supreme Court of this state had occasion to point out that under these statutes the power of the County Judge is somewhat limited. In that case, by some rather broad, sweeping language, the court succinctly stated:

"The language of the statutes as to the actions of the county judge is mandatory. *When the county judge is presented with a statutory petition, and proof satisfactory to him has been made that the territory sought to be incorporated contains the requisite number of resident qualified electors, then the county judge has no discretion as to whether or not he will call the election, but he must do so.* If the county judge should refuse to call an election under these circumstances, he can be forced to do so by writ of mandamus. This is true whether his power to order the election be called judicial, administrative, or political. * * * To sanction any such action would lead to a frustration of the will of the electors in an area sought to be incorporated." (Emphasis Supplied).

In explaining that the statutes conferred no power on the County Judge to determine whether the area contained more territory than was intended for town purposes, the court quoted the language used by the Texas Commission of Appeals in State ex rel. Wilke v. Stein, 26 S.W.2d 182, as follows:

"' * * * The law gives to the qualified voters of the inhabitants of a town or village the right to fix the boundaries of the territory sought to be embraced in the proposed incorporated town or village. What territory shall, or shall not, be included, is a question of fact to be determined by the people immediately interested. * * * If the corporate lim-

its of a town or village are adjusted in the reasonable exercise of the judgment of the voters, and the exclusion or inclusion of lands, belonging to those who might object thereto, was not arbitrarily done, as for instance, for the purpose of exacting revenues without a compensation, or to prevent inhabitants of a given territory from participating in the advantages of the incorporation, whose situation is such as to reasonably and conveniently entitle them to such advantage, then in such a case the courts would be without power to interfere. State ex rel. Simpson Attorney General v. Village of Dover et al., 113 Minn. 452, 130 N.W. 74, 539; 43 C.J. p. 80, et seq.' "

In Ewing v. State ex rel. Pollard, 1891, 81 Tex. 172, 16 S.W. 872, 874, also cited with approval in the Perkins case, supra, the Supreme Court pointed out that while the County Judge was authorized to determine whether the proposed corporation contained the requisite number of inhabitants:

" * * * He is not invested with the power to withhold the order of election because the proposed limits may embrace territory that ought not to be included. * * * (W)e think that the inhabitants of the city or the promoters of the corporation must fix the limits for themselves. * * * "

■ Turning to appellant's contention that the legislature intended to confer upon the County Judge the power to make the factual determination of whether a town or village, in fact, existed, we fail to find anything in the statutes indicating that the legislature intended to confer such power on the County Judge. While the legislature clearly and concisely stated: "If satisfactory proof is made that the town or village contains the requisite number of inhabitants, the county judge shall make an order for holding an election * * *", no other discretionary power was conferred. Had the legislature intended to confer some further discretionary power

upon the County Judge, it could have easily done so in the same manner that it conferred discretionary power upon the County Judge with respect to determining whether the area contained the requisite number of inhabitants. As we interpret the statutes, the only discretionary power conferred was the power to determine whether or not the requisite number of 200 inhabitants resided in the district. This appears to be the limit of his discretionary power, whether it be called judicial, administrative or political. Upon so finding, he had no further discretionary power. His discretionary authority became functus officio. By its exercise it was exhausted. Thereafter, the County Judge merely had the duty of declaring the act of the legislature to be operative. He has no discretion as to whether or not he will call the election but is required to do so.

The question naturally arises: Can the County Judge be compelled to order an election even though he knows or has proof showing that no town or village exists? We think the question has already been answered by some of the above cited cases. That is, since this is essentially a political matter, the legislature, in its wisdom, with the idea of allowing the people the fullest political freedom, found it politically expedient to confer the determination of this particular matter upon the people, just as the legislature left the determination of what territory was to be included in the town in the hands of the people.

If the County Judge is to be permitted to determine these important factual matters, the legislature alone has the power to vest him with such authority. The courts of this state, under the doctrine of separation of powers, are not permitted to usurp the function of the legislature and confer such power under the guise of judicial construction.

As pointed out in the Perkins case, the courts are not powerless to correct situations where the voters have failed to exercise reasonable judgment and good faith in organizing a city. Under proper allegations and proof, the matter can be raised in a quo warranto proceeding attacking the validity of the incorporation.

For the reasons stated, the judgment of the trial court is affirmed.