Donald E. **DEAL**, Appellant,

v.

Lloyd **BONNER**, et al, Appellees.

No. 09 84 310 CV.

Court of Appeals of Texas,
Beaumont.

Nov. 14, 1985.

William D. Perkins, Lufkin, for appellant.

Bill Frizzell, Tyler, for appellees.

## OPINION

BROOKSHIRE, Justice.

In late March, 1984, the District Court of Angelina County, after a show cause hearing, found that a petition bearing the signatures of more than 400 resident voters or electors of the City of Hudson, seeking the disincorporation of the municipal corporation, had been filed with the Mayor of Hudson, Donald E. Deal. The court decided that the Mayor was required to order an election but that he had failed to do so. The District Court ordered an election under *TEX.REV.CIV.STAT.ANN. art. 1241a* (Vernon 1985 Pamph.Supp.), issuing a writ of mandamus to that effect. The court refused to set or allow a supersedeas bond. The Appellant complains of the issuance of the mandamus and the failure to set a supersedeas bond.

Hudson had been in existence for a number of years—about 17—and was the owner of an excellent, efficient sewer system which, of course, has some attendant expense in its proper operation. Apparently, the local economic situation was not as vigorous and booming after 1980 as it had been before 1980. A group of citizens of the City initiated an ad valorem tax proposal.

About the same time another group of citizens decided to request an election for the purpose of legalizing the sale of alcoholic beverages off premises. Another group of citizens was against ad valorem taxes and liquor sales. The citizenry against legalizing liquor sales utilized certain statutory provisions for the disincorporation of the municipality of Hudson. Petitions for disincorporation were circulated and various signatures—found by the trial judge to be in excess of 400 and being of proper, legally qualified voters—were secured.

After the petitions were filed, the Mayor took a good deal of time to check the petitions for accuracy and legality. Deal's actions and his failure—or refusal—to order the election was a hotly contested issue in the show cause hearing in the district court. After January 31, 1984, the Appellant Mayor says that he checked the petitions by consulting mail carriers, various maps of the community and certain individual citizens who lived in the area for long durations of time. He also obtained other information and materials including two voter registration lists. After comparing the names on the petitions with the names on the voter registration lists, he concluded that there were not the required number of qualified voters who had signed the petition. On March 1, 1984, the Appellant announced at a regular meeting of the city council that he would not call a disincorporation election.

The Appellant, in his brief, states:

"There then began a virtual race track of judicial actions which belie the alleged dilatoriness of which our judicial system often stand[s] accused."

On March 6, 1984, a petition for writ of mandamus was filed. On March 7th a show cause hearing was set for March 16th. On March 10th a notice to show cause, with other suit papers, was served on the Appellant. He was ordered to appear for the show cause hearing which was set, apparently, for 6 days later. On March 22nd, a motion to have a jury trial, a plea in abatement, and a motion for continuance were overruled. The hearing commenced on March 22, 1984. On March 27, 1984, a writ of mandamus was issued ordering the Mayor, Deal, to call an election on disincorporation of the City of Hudson for April 7, 1984.

Deal filed an application for a supersedeas bond in the trial court. Supersedeas bond was refused by the district judge. Deal applied to this intermediate court for a writ of mandamus to compel the district judge to set a supersedeas bond.

After reviewing the record and hearing argument of counsel, we determined, in April of 1984, that supersedeas bonds were

governed by *TEX.R.CIV.P. 364.* We decided that the setting of such a bond was a "ministerial act." *Continental Oil Company v. Lesher,* 500 S.W.2d 183, 185 (Tex. Civ.App.—Houston [1st Dist.] 1973, no writ); *Sams v. Coker,* 514 S.W.2d 351 (Tex. Civ.App.—Houston [1st Dist.] 1974, no writ). In *Yett v. Cook,* 115 Tex. 175, 268 S.W. 715, 717 (1925), we found:

"It is the settled law of this state that a judgment awarding the peremptory writ of mandamus is within the provisions of the statute quoted, and may be appealed from and superseded. (quoting authorities]"

We granted Deal's petition for mandamus and the district court was ordered to set a supersedeas bond. *See Deal v. Bonner,* 667 S.W.2d 635 (Tex.App.—Beaumont 1984, no writ). Also, *see and compare Hill v. Fourteenth Court of Appeals,* 695 S.W.2d 554 (Tex.1985). We have not been advised officially of the results of the election of April 7, 1984.

The Appellant brings forward four points of error, one of which is overruling his Motion for Continuance. These motions are especially addressed to the discretion of the trial court. We do not find abuse of discretion. Point of Error Number Three is overruled.

■ The second point of error basically complains of the trial court overruling the Appellant's Plea in Abatement. The point is couched in language that the trial court erred in entering a judgment prior to the expiration of twenty days from the service of citation. The Appellant cites *TEX.R. CIV.P. 124* and *101.* *Rule 124* provides an exception, reading in relevant part:

"... except where otherwise expressly provided by law or these rules."

We perceive that *Rule 101* is not the paramount, governing rule because the proceeding was a hearing on a Motion to Show Cause. Furthermore, we think that precedent and soundly-reasoned cases are contrary to the Appellant's position. Decisional law has settled the question and established that a show cause hearing may and, indeed, in some circumstances, should be had in a writ of mandamus proceeding before the expiration of the 20 days from the date of the service of the citation on the main suit as provided for in *Rule 124.* *Miller v. State ex rel. Meyers,* 53 S.W.2d 838 (Tex.Civ.App.—Amarillo 1932, writ ref'd) is a persuasive and parallel decision. In *Miller, supra,* the suit was filed on the first day of the April term of court. The judge ordered copies of the petition to be served and set the cause down for hearing on April 6th. The hearing was actually conducted April 25th. On that same date, April 25th, judgment was rendered by the court awarding a peremptory writ of mandamus against the defendants commanding them to meet and issue an order for a recall election. Citing *TEX.REV.CIV. STAT.ANN. art. 1914* (Vernon 1964), the court reasoned that "[judges] of the district courts may either in term time or in vacation, grant writs of mandamus, injunction ... certiorari and supersedeas, and all other writs necessary to the enforcement of the jurisdiction of the court." The court concluded, at page 839:

"Power to grant the writ in vacation is inconsistent with the idea that citation should be issued as in a suit regularly filed and be served ten days before the first day of the term."

The *Miller, supra,* case also interestingly writes, at page 840:

" 'Although mandamus is the appropriate remedy to compel the performance of a duty which is plain, positive, and ministerial in character and clearly imposed by law, it does not necessarily follow merely because the duty is discretionary or that the element of discretion exists in part, that mandamus will not lie. The correct rule is that mandamus will not lie where the duty is clearly discretionary and the party upon whom the duty rests has exercised his discretion reasonably and within his jurisdiction; that is, upon facts sufficient to support his action.' "

That holding, capsuled, is to the effect that a writ of mandamus is a proper remedy to compel a reasonable exercise of official discretion. A basic public policy of Texas is

to allow and even encourage the citizens to have the right to vote in public elections. The trial court, in entering its order granting the writ of mandamus, did not err. We overrule Point of Error Number Two.

Point of Error Number One contends that the trial court committed error in ordering a writ of mandamus because the petitioners below failed to prove Deal acted *unreasonably, arbitrarily and capriciously.* In a recent case styled *Nick Lampson, Jefferson County Tax Assessor-Collector v. South Park Independent School District (Successor in Interest to Beaumont Independent School District)* 698 S.W.2d 407 (Tex.App.—Beaumont 1985), we held that mandamus was a proper remedy where the act was ministerial in nature and required by statutory enactments. We further held that either the failure to act or the refusal to act would be a proper basis for the issuance of mandamus. Moreover, we held, on sound authority, that appellate courts were reluctant to overturn district judges, either in the granting or the refusing of a writ of mandamus, unless a clear abuse of the trial judge's discretion was lucidly demonstrated. We observe, in *Forbes v. City of Houston,* 356 S.W.2d 709 (Tex.Civ.App.—Houston 1962, no writ) that:

"Appellate courts are reluctant to *disturb discretion exercised by lower court* in granting or refusing award of writ of mandamus." (Emphasis added)

We find none here.

Bonner, et al, did not have the burden of proving that the Mayor acted unreasonably, arbitrarily or capriciously. Upon their showing that he failed or refused to perform a statutory duty, mandamus would properly lie. Because of the mandatory and affirmative duties as set out in *TEX.REV.CIV.STAT.ANN. art. 1241a* (Vernon 1985 Pamph.Supp.), we find that the Mayor was compelled, as a ministerial act, to call an election. There was no judicial discretion nor quasi-judicial function to be performed on his part.

One of the major thrusts of the argument under the Appellant's Point of Error

Number One is that a trial court should not issue a writ of mandamus unless it is shown that the action of the official was *tainted by fraud, capriciousness or arbitrariness* on the part of the elected official. As stated above, we do not think this is the true touchstone test for the issuance of mandamus.

In the writ of mandamus proceeding below the trial judge is the trier of facts. It is his duty, prerogative, and responsibility to weigh the evidence and find where the preponderance of the evidence lies. It is his duty to pass on the credibility and believability of the witnesses. The trial judge can believe part of a witness' testimony and disbelieve other portions. He can believe *all or none* of a witness' testimony.

Deal, inter alia, testified that there were 10 names on the petition that had no voter's registration number and there were some additional 10 or 12, the Mayor decided, that lived outside the city. The remainder that he eliminated was disallowed because the names and/or addresses did not compare favorably to the voter's registration lists. He used two voters' registration lists for this comparison, one being dated June or July of 1983 and the other February of 1984.

Later, the Mayor testified that the second 10 or 12 names on the petition were names of people who did not live inside the City, in his opinion, and that there were one or two names that did not appear to have been individuals who had registered to vote in Hudson. The Mayor agreed that he had disallowed some names of people who were, in fact, registered voters in Hudson.

When the Mayor was asked if he would agree that there were in excess of 400 names on the petition of people who were valid, registered voters in Hudson, he replied that he would concede that there were well over 400 names on the petition: "if they are those people, they are registered voters in the City of Hudson, right." He answered, in substance, that in about four or five cases it appeared evident that a man and wife's signatures were both written by

the same person. He testified later that he did not disapprove of anyone's name for that reason, however.

After further questioning:

"Q So, in your opinion, Mr. Deal, the names and signatures on that petition were actually signed by those persons?

"A I have no reason to believe otherwise."

Although only 400 signatures were required, the petition contained approximately 457 signatures alleged to have been registered voters in the City of Hudson. *See and compare Nick Lampson, Jefferson County Tax Assessor-Collector v. South Park Independent School District (Successor in Interest to Beaumont Independent School District), supra.*

Later on, when asked, Deal, after subtracting the names that he eliminated for more or less specific reasons, said there would be approximately 433 names left on the petition. He was asked:

"Q ... Of those people that were left, four hundred and—approximately four hundred thirty-three names, can you point out on the petition a name or a signature that you do not believe is a person that is registered to vote in the City of Hudson?

"A No, I can't, because I'm not sure I know who that person is."

The parties, by agreement, agreed 400 signatures were needed.

The dissenting opinion relies upon *art. 1241a, sec. 4; Franklin v. Wilson,* 242 S.W.2d 820 (Tex.Civ.App.—Eastland 1951, mand. overr.); *Reagan v. Beck,* 474 S.W.2d 935 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.).

We think that no one of these authorities is controlling or persuasive in this case. *Article 1241a,* in brief substance, provides under *sec. 1* that incorporated towns of 10,000 inhabitants or less may disincorporate. *Section 2* provides that when 400 of the qualified voters resident in such town desire to do so, they may petition the mayor to that effect. *Section 2* provides that the mayor "shall" order an election. The

word "shall" has been construed to mean mandatory. The election on disincorporation is to be held on the same date provided by law for the next general election for the mayor.

*Section 3* provides that all persons who are qualified resident voters of the town may cast ballots. The operative parts of the statutes, in plain language, mandatorily provide that when 400 of the qualified voters who are residents in such city or town desire such disincorporation, they may petition the mayor, who *shall* order an election.

*Section 4* states the disincorporation election is to be ordered according to *art. 1241a,* the same as in the case of incorporation of such town, except that the mayor *shall* perform all duties performable in the case of *incorporation* by the county judge.

The dissenting opinion's reliance on *Reagan v. Beck, supra,* is misplaced. In *Reagan,* the county judge filed findings of fact in which he found that a petition containing the signatures of more than 20 resident qualified voters who resided in the proposed area was duly filed requesting the election. The number of resident qualified voters was not an issue. The language in *Reagan* on that point is dicta. It is interesting to note, however, that the district judge, in *Reagan,* issued the mandamus which was affirmed. When *secs. 2 and 4* of *art. 1241a* are read together harmoniously, they dictate to the mayor the mandatory duty to call the election on disincorporation.

In *Perkins v. Ingalsbe,* 162 Tex. 456, 347 S.W.2d 926 (1961), the Court succinctly stated, 347 S.W.2d at page 930:

"The language of the statutes as to the actions of the county judge is *mandatory. When the county judge is presented with a statutory petition, and proof satisfactory to him has been made that the territory sought to be incorporated contains the requisite number of resident qualified electors, then the county judge has no discretion as to whether or not he will call the election, but he must do so.* If the county should refuse to call an election

under these circumstances, he can be forced to do so by writ of mandamus. This is true whether his *power* to order the election be called *judicial, administrative, or political.* ... Once the county judge is vested with jurisdiction by a petition complying with the statutory requirements and he has put in motion the election process, he cannot interfere with it or prevent the will of the electors being expressed by an attempted revocation of his election order. To sanction any such action would lead to a frustration of the will of the electors in an area sought to be incorporated." (Emphasis added)

For the district judge to have failed to issue the mandate would have lead to a complete frustration of the will of the electors in the area sought to be disincorporated. We perceive that *Reagan* is authority for the action of the trial judge in issuing the mandamus. *Franklin v. Wilson, supra,* is simply not parallel or persuasive. It is certainly not controlling.

In *Perkins v. Ingalsbe, supra,* the Supreme Court construed *TEX.REV.CIV. STAT.ANN. arts. 1133–1139* (Vernon 1985 and 1985 Pamph.Supp.), (which by necessary implication are relied upon by the dissenting opinion), 347 S.W.2d at page 930:

"Arts. 1133–1139, Vernon's Texas Civil Statutes, contain the statutory provisions referring to the incorporation of an area such as Impact. Art. 1134 prescribes the mode of incorporation and the requisites of the petition seeking incorporation which must be presented to the county judge. Art. 1136 provides that 'if satisfactory proof is made that the town or village contains the requisite number of inhabitants, the county judge *shall* make an order for holding an election * * *.' Art. 1139 requires that the returns of the election shall be made to the county judge within ten days, and that 'the county judge *shall,* within twenty days after the receipt thereof make an entry upon the records of the commissioners court that the inhabitants of the town or village are incorporated within the bound-aries thereof,' and the boundaries to be set out in such entry (emphasis added)."

We think that part of the dissenting opinion holding that "[t]he question of whether or not a proposed city or town contains the requisite number of inhabitants involves a fact question solely within the discretion of the county judge and his ruling is final in the absence of fraud" is affirmatively wrong and is a misstatement of the substantive law. We find no basis, in this record, to sustain Point of Error Number One. The same is overruled.

■ The fourth and last point of error is that the trial court erred in refusing to permit Deal a trial by jury. A timely request was made for a jury. The jury fee was tendered. We find that the pleadings in this case, when liberally construed, have raised certain issues of fact. The evidence may have raised fact issues upon which we think Deal would be entitled to a jury trial. However, this ruling and decision does not vitiate, in any degree, the elections or the results thereof.

We think, under this entire record, the case should be remanded for a trial by jury in behalf of Appellant if he still desires a jury trial in a proceeding that is not inconsistent with this opinion. The order of the trial court granting its writ of mandamus is reversed.

In *Guaranty Old Line Life Co. v. McCallum,* 97 S.W.2d 966 (Tex.Civ.App.—Dallas 1936, no writ), the court wrote, at page 968:

"A 'mandamus' is a civil action and parties thereto are entitled, whenever the material facts are contested, to a trial of the issue as in other suits.

"The relators, under their pleadings, had the right to have a jury trial upon the issue of bad faith ... This deprives the defendants of a trial by jury in contravention of his rights guaranteed under the Constitution and laws of this state."

We assume, without deciding, that an election has been held, the results of which have not been made known to us, officially, in the record before us. The remand we

order is strictly limited to a trial on the material fact issues presented by the then trial pleadings and the evidence.

We have not been favored with any supplemental records, or supplemental briefs. All records before us were filed before the election. Oral arguments were not presented. The question of mootness presents itself boldly. We perceive that the question of mootness is better to be determined by the district court.

REVERSED AND REMANDED.

BURGESS, Justice, concurring and dissenting.

I concur in the result reached by the majority. I respectfully dissent to that portion of the majority opinion which holds the granting of the mandamus was proper. I believe the mayor of Hudson had a duty which involved some discretion. *Article 1241(a), sec. 4, supra,* provides that an election to abolish a corporate existence, shall be ordered as in the case of the incorporation of such city, except the mayor shall perform all acts performable in the case of incorporation by the county judge. *See also, Franklin v. Wilson,* 242 S.W.2d 820 (Tex.Civ.App.—Eastland 1951, mand. overr.). The question of whether or not a proposed city or town contains the requisite number of inhabitants involves a fact question solely within the discretion of the county judge and his ruling is final in the absence of fraud. *Reagan v. Beck,* 474 S.W.2d 935 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.). If this is so in an incorporation petition, then it must also be so in a abolishment petition. I would not only reverse the judgment of the trial court, but would render and deny the application for writ of mandamus.