**CITY OF SEVEN POINTS, TEXAS, and Walter Taliaferro, Mayor Pro Tem, Appellants,**

v.

**M.D. ANDERSON, Jr., et al., Appellees.**

**No. 12–89–00112–CV.**

Court of Appeals of Texas, Tyler.

Jan. 11, 1990.

Rehearing Denied Feb. 22, 1990.

Ronald R. Waldie, Seven Points, for appellants.

Ronald D. Hinds, Dallas, for appellees.

COLLEY, Justice.

This is an appeal brought by the city of Seven Points, Henderson County, Texas, and its mayor pro tem, Walter Taliaferro, from an order of the 173rd Judicial District Court for the issuance of a writ of mandamus. This writ compelled the mayor pro tem to order a municipal election on the proposition of abolishing the corporate existence of Seven Points under the Tex. Local Gov't Code Ann. § 62.002 (Vernon 1988)[1] (hereinafter referred to as section 62.002). Since we conclude that the court erred in issuing the writ, we reverse the judgment of the trial court and render judgment that the petition for mandamus be denied.

Appellants Walter Taliaferro, mayor pro tem,[2] and the city of Seven Points present five points of error by which they contend that: (1) there is no evidence that former Mayor Skinner "failed to perform a purely ministerial duty...."; (2) the court had no jurisdiction to order the writ of mandamus; and (3) the evidence is legally and factually insufficient to support the court's finding that the petition contained "at least two-thirds of the qualified voters of [Seven Points]...."

The record reveals that a petition requesting the abolition of the corporate existence of Seven Points was submitted to former Mayor Skinner on March 23, 1988. The petition, when submitted, contained the signatures of 207 persons. It is undisputed that "a majority of the qualified voters of [Seven Points] is less than 400...."

Upon receipt of the petition, Skinner appointed a committee of three persons on March 30, 1988, viz., Carl Thrower, Val Tolivar, and Evelyn Montgomery to study and evaluate the petition. On April 5,

1988, that committee filed a written report with Skinner and the city council (defendant's exhibit 2). According to that report, the committee concluded that the petition contained 176 "legal names" and that the "[t]otal legal voters [approximate] as close as can be determined [were] 358." Based on this report, Skinner made findings of fact in keeping with the report and refused to call the election.[3]

The trial court, after having heard evidence, granted appellees' petition for writ of mandamus, and ordered the mayor pro tem or other proper officer of Seven Points to call the abolition election for May 6, 1989.

■ As we construe appellants' remaining points of error, they claim (1) that former Mayor Skinner had absolute, unreviewable discretion to decide the material facts and either grant or deny the petition, and (2) alternatively, the evidence does not legally or factually support the trial court's finding that two-thirds of the qualified voters signed the petition. In support of their first contention, appellants cite *Forbes v. City of Houston*, 356 S.W.2d 709 (Tex.Civ. App.—Houston 1962, no writ), and *Reagan v. Beck*, 474 S.W.2d 935 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.). Appellants misread *Forbes* which dealt only with an ordinance. That ordinance, as the court stated, "[did] not impose upon the City a clear and precise ministerial duty...." *Id.* at 711. However, the *Forbes* court did observe, by way of dicta, that "where a mandate [is] imposed upon the City by state law ..." then a ministerial duty exists, and citing *Stone v. City of Wylie*, 34 S.W.2d 842 (Tex.Comm'n App.1931), wrote: "In order for an action of the city council to be sub-

---

**1.** Section 62.002 reads:
  PETITION AND ELECTION
    (a) The mayor of the municipality shall order an election on the question of abolishing the municipality's corporate existence if a petition requesting that the election be held is submitted to the mayor and is signed by at least 400 qualified voters of the municipality. However, if a majority of the qualified voters of the municipality is less than 400, the petition must be signed by at least two-thirds of the qualified voters of the municipality.

    (b) The mayor shall order the election to be held on the same date as the next general election at which the office of mayor is to be filled.

**2.** The record discloses that Harold Skinner is no longer the mayor of Seven Points.

**3.** Under Skinner's findings, the petition contained the signatures of only 49 percent of the qualified and registered voters of the city.

ject to mandamus, the act must be a ministerial act or, *if discretionary,* there must have been a clear case of abuse of discretion." *Forbes,* 356 S.W.2d at 711 (emphasis ours). *Forbes* does not support appellants' first contention. Section 62.002 imposed a clear ministerial duty on Skinner to grant the petition if it contained the signatures of two-thirds of the qualified and registered voters of Seven Points and the other information required by Tex.Elec. Code Ann. § 277.002 (Vernon Supp.1990) (hereinafter section 277.002).[4]

In *Reagan v. Beck,* the trial court issued a writ of mandamus compelling the county judge to issue an order calling an incorporation election for "an area to be known as Payne Springs under the provisions of Articles 1133, 1134 and 1136, Vernon's Annotated Texas Statutes." *Id.* at 936 (footnote omitted). Appellants argue that this court held in that case that those statutes conferred upon the county judge the absolute, unreviewable discretion, in the absence of fraud, to determine whether the village of Payne Springs "[contained] the requisite number of inhabitants" to authorize incorporation under those statutes. That was not the holding in *Reagan.* The quote from *Reagan* appearing in appellants' brief is obiter dictum. Moreover, it was and is incorrect, and we disapprove it.

The material evidence presented at trial[5] was the testimony of M.D. Anderson, Jr., Virginia Springer, and Robert Simmons, all of whom testified for appellees, and Carl Thrower, who testified for appellants.

M.D. Anderson, Jr., a 14–year resident of Seven Points and a former city councilman, testified that he was quite familiar with the boundaries of the city. He said that in 1982 he actively campaigned for a local option election to legalize the sale of alcoholic beverages in the city, and that he had gone from house-to-house on that occasion and he had looked at "every piece of property that was in the city." Anderson testified that the total number of qualified registered voters in Seven Points was 250 people "at the very max [sic]." Anderson related that he had studied copies of lists of people who had voted in previous elections in the city. He said that the petition (plaintiff's exhibit 2) contained the signatures of 207 qualified registered voters of the city. He stated that he personally delivered the petition to the mayor at that time, Harold Skinner, on March 23, 1988. Anderson related that he and several other individuals actually secured the signatures on the petition calling for the election. He testified that the total number of qualified registered voters in Seven Points at the time of the submission of the petition to former Mayor Skinner was between 240–260 people.

Virginia Springer testified that she also secured signatures for the petition. She said that she reviewed registration lists of voters taken at former municipal elections and compared that information with current registration in certain county precincts which included Seven Points. She testified that the total number of registered qualified voters in the city was between 247 and 250.

Robert Simmons, another former city councilman of Seven Points, admitted that "you can't find anybody in this county that can tell you who's in the city limits of Seven Points." But Mr. Simmons stated that he believed that the figure 250 is "pretty close."

Appellants called Carl Thrower to testify on their behalf. Mr. Thrower had twice

---

**4.** Section 277.002 reads:

(a) For a petition signature to be valid, a petition must:

  (1) contain in addition to the signature:

    (A) the signer's printed name;

    (B) the signer's voter registration number and, if the territory from which signatures must be obtained is situated in more than one county, the county of registration;

    .(C) the signer's residence address; and

    (D) the date of signing; and

  (2) comply with any other applicable requirements prescribed by law.

(b) A voter registration number is not required to appear on the petition in the signer's own handwriting.

**5.** Exclusive of plaintiff's exhibits 2 and 3 (the petition and the mayor's findings of fact and conclusions of law), and defendant's exhibits 1 and 2 (election instructions and report from the mayor's investigating committee).

been mayor of Seven Points. He was a former chairman of the city's Planning and Zoning Commission, and at the time of trial, he was Chairman of the Board of Adjustments for the city of Seven Points.

Thrower was also the chairman of the three-person committee appointed by Skinner to "investigate the petition.... The disincorporation." Thrower stated that he had consulted with Mrs. Nelda Crecilius, a person who was "over voter registration for Henderson County." He stated she worked in the Tax Office of Henderson County. Thrower said that the total number of registered qualified voters in Seven Points was 358. He admitted that it was a difficult task to determine the correct total because "there's [sic] many weekenders." Thrower candidly admitted that he and the other two members of the committee appointed by Skinner were "against" calling the election.

Our review of this record reveals that the petition contains the printed names and valid signatures of 204 persons. Three of those failed to record their voter registration number and three do not have the dates of their signatures endorsed on the petition, which are requirements of section 277.002. Hence, we conclude that those six persons' signatures are invalid under the statute, leaving a total number of 198 petitioners.

The court made the following findings of fact, to wit:

## FINDINGS OF FACT

a) The number of qualified voters of the City of Seven Points, Texas is less than 400.

b) A petition signed by at least two-thirds of the qualified voters of the City of Seven Points requesting that an election be held on the question of abolishing the corporate existence of the City of Seven Points was submitted to the Mayor of the City of Seven Points.

c) Such petition was submitted to the Mayor of the City of Seven Points at a time such as to provide the said mayor

with ample opportunity to comply with all requirements of the Texas Election Code and the Texas Government Code in holding such an election consistent with these two Codes.

d) There exists no lawful reason for not holding such election on the question of abolishing the corporate existence of the City of Seven Points upon the 6th day of May, 1989.

■ We now address appellants' contention that the trial court had no jurisdiction to review by mandamus proceeding former Mayor Skinner's refusal to call the abolition election. It has long been the law in this state that a mandamus proceeding is a civil action subject to trial upon substantive law principles and procedural rules as in any other civil suit. Tex. Const. art. V, § 8; Tex.Gov't Code Ann. § 24.011 (Vernon 1988); *Griffin v. Wakelee*, 42 Tex. 513, 516 (1875); *Uvalde Rock Asphalt Co. v. Loughridge*, 425 S.W.2d 818, 820 (Tex.1968); *cf. Vondy v. Commissioners Court of Uvalde County*, 620 S.W.2d 104, 108 (Tex.1981). Therefore, the trial court had jurisdiction to consider the petition for mandamus and to determine the legal and factual issues therein presented. Appellants' points of error one, two and three are overruled.

The principal issue [6] before us is whether Skinner was guilty of a gross abuse of the discretion delegated to him by section 62.-002, when read with section 277.002, by refusing to grant the petition and call the election.

In *Dykes v. City of Houston*, 406 S.W.2d 176, 182–183 (Tex.1966), our Supreme Court clearly enunciated the law controlling the granting of writs of mandamus by a trial court against public officers. The *Dykes* court wrote:

While many of our decisions declare, without qualification or exception, that mandamus will not issue to compel the performance of an act which involves an exercise of discretion or judgment, this rule is not without limitation, and the writ may issue in a proper case to correct a clear abuse of discretion. *Crane v.*

---

**6.** Under appellants' points of error four and five.

*Tunks,* 160 Tex. 182, 328 S.W.2d 434 (1959); *Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677 (1956); *City of Houston v. Adams,* 154 Tex. 448, 279 S.W.2d 308 (1955); *Stakes v. Rogers,* 139 Tex. 650, 165 S.W.2d 81 (1942); *City of San Antonio v. Zogheib,* 129 Tex. 141, 101 S.W.2d 539 (1937). This is especially so where there is no adequate remedy at law.

*Dykes,* 406 S.W.2d at 183.

In *Dykes,* the court, in effect, stated that if the public officer acted "arbitrarily or unreasonably," then the writ may issue. In other words, according to *Dykes,* a public officer abuses his discretion if, upon the evidence before him, his determination is arbitrary or unreasonable. *Id.* at 182, 183. Indeed, in *Zogheib,* cited by the *Dykes'* opinion, that court wrote: [7]

> [T]hat a mandamus will lie to correct a gross abuse of discretion upon the part of [a public officer] entrusted with ... discretion, when such abuse is so clearly shown as to establish the fact that in performing the act complained of the [officer] acted wholly through fraud, caprice, or by a purely arbitrary decision, and without reason. (Citations omitted.)

*Zogheib,* 101 S.W.2d at 543.

■ The evidence before us is conflicting as to the actual number of qualified and registered voters who reside within the city limits of Seven Points. There is evidence that Skinner undertook to determine the total number of qualified voters. He appointed a committee who found the total qualified registered voters to be 358. That figure was admittedly only an estimate, but the total of 240–260 residents testified to by appellees' witnesses were likewise only estimates. At trial, appellees bore the burden to present evidence that demonstrated that Skinner's refusal to grant the petition and call the election was arbitrary and unreasonable. Based on the record before us, we conclude that appellants failed to discharge that burden. Therefore, the court erred in granting the mandamus. We sustain appellants' points of error four and five.

7. Quoting from older authorities.

The judgment is reversed, and we now render judgmemt denying the appellees' petition for writ of mandamus.

