# Supreme Court of Texas

No. 20-0855

Josh Schroeder in His Official Capacity as Chair of the City of Georgetown Planning and Zoning Commission, Along with the Following Members of the Planning and Zoning Commission Also in Their Official Capacities: Tim Bargainer, John Marler, Ercel Brashear, Kayla McCord, Gary Newman, and Ben Stewart,

*Petitioners*,

v.

Escalera Ranch Owners' Association, Inc.,

*Respondent*

On Petition for Review from the
Court of Appeals for the Seventh District of Texas

**Argued February 23, 2022**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

We decide whether governmental immunity protects a zoning commission's determination that a proposed subdivision conforms with

applicable law. We hold that it does, absent a clear abuse of discretion. We therefore reverse the judgment of the court of appeals.[1]

**I**

Escalera Ranch is a subdivision within the City of Georgetown's extraterritorial jurisdiction. It and a neighboring subdivision contain some 150 homes and 15 vacant lots, combined. Both subdivisions are accessed via Escalera Parkway, a winding residential street that traverses Escalera Ranch. A developer applied to the City's Planning and Zoning Commission for approval of a preliminary plat for a new 89-home subdivision, Patience Ranch, neighboring Escalera Ranch to the north. As planned, Escalera Parkway would provide the only access to homes in the new subdivision.

Several Escalera Ranch residents expressed concerns that traffic on the Parkway would increase to an unsafe level and impede access by emergency services. They asserted that the plat did not conform to the City's Unified Development Code (UDC). They claimed that under the UDC, streets like Escalera Parkway are expected to carry no more than 800 vehicles per day and serve a maximum of 80 dwelling units, while the Patience Ranch developer's traffic survey showed that the Parkway already carried almost 1,200 vehicles per day before the new development. The Escalera Ranch residents also asserted that the plan did not conform to a requirement of the International Fire Code, which the City had adopted, that there be two separate fire-access roads for the area. The Patience Ranch plat provided only one: Escalera Parkway.

---

[1] 610 S.W.3d 521, 528 (Tex. App.—Amarillo 2020).

2

But the Patience Ranch and Escalera Ranch subdivisions were proposed to connect with future development, which would provide another access point and reduce traffic levels on Escalera Parkway. A connection with future development was also an express exception to the two-fire-access-road requirement. After analysis, Commission staff reported that "[t]he proposed Preliminary Plat meets all of the requirements of the [UDC] for a 95-lot (89 single-family lots and six (6) landscape lots) residential subdivision." And at a public meeting, the City's Assistant Fire Chief agreed that the new subdivision would meet fire code standards. Given this determination that the Patience Ranch development conformed to applicable requirements, the Commission concluded that it had a ministerial duty to approve the plat as required by statute.[2]

The Escalera Ranch Owners' Association sued the Commission members in their official capacities, asserting that the Patience Ranch plat was nonconforming and that their approval of the plat was a clear abuse of discretion. The Association sought mandamus relief directing the Commissioners to rescind their approval of the plat. In a plea to the jurisdiction, the Commissioners argued that they had a ministerial duty to approve a plat they had determined to be conforming and that the Association lacked standing to sue, so mandamus could not lie. The trial court granted the Commissioners' plea. The Association appealed.

---

[2] TEX. LOC. GOV'T CODE § 212.005 ("The municipal authority responsible for approving plats must approve a plat . . . that satisfies all applicable regulations."); *id.* § 212.010(a) (stating that "[t]he municipal authority responsible for approving plats shall approve a plat" that conforms to municipal rules and other law).

3

The court of appeals reversed.[3] The court first determined that the Association had standing based on its assertions that traffic levels on Escalera Parkway would exceed those contemplated by the street's design.[4] The increased traffic and the accompanying safety risks amounted to a particularized injury. The court then determined that while the Commissioners had a ministerial duty to approve a conforming plat, their determination of whether the plat was in fact conforming was a matter of discretion that could be judicially reviewed for a clear abuse.[5] The court concluded that the Association had raised a fact issue of whether the Commissioners had clearly abused their discretion in approving the plat.

We granted review.

## II

"[P]lat approval is a discretionary function that only a governmental unit can perform."[6] But once the relevant governmental unit determines that a plat conforms to applicable regulations, it has a ministerial duty to approve that plat.[7] The Commission made such a determination in this case. If correct in its determination of conformity,

---

[3] 610 S.W.3d at 528.

[4] *Id.* at 525-526.

[5] *Id.* at 526-528.

[6] *City of Round Rock v. Smith*, 687 S.W.2d 300, 303 (Tex. 1985).

[7] *See* TEX. LOC. GOV'T CODE §§ 212.005, 212.010; *Howeth Invs., Inc. v. City of Hedwig Village*, 259 S.W.3d 877, 895 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) ("[I]n situations in which the plat applicant has done all that the statutes and law demand[], the approval of the plat becomes a mere ministerial duty." (cleaned up)).

4

then the Commission had a ministerial duty to approve the plat. The Association argues that the Patience Ranch plat did not conform to the UDC, and therefore the Commissioners clearly abused their discretion in approving it.

Governmental immunity protects the State's political subdivisions from suit and liability.[8] The Legislature may waive governmental immunity by statute.[9] The Association concedes that it has not done so in the case of plat approval. However, governmental immunity will "not bar a suit against a government officer for acting outside his authority—*i.e.*, an *ultra vires* suit."[10]

"To fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act."[11] "[A] government officer with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus *ultra vires*, if he exceeds the bounds of his granted authority or if his acts conflict with the law itself."[12] If the

---

[8] *Chambers–Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 344 (Tex. 2019).

[9] *Id.*; *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853-854 (Tex. 2002).

[10] *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 161 (Tex. 2016); *see also City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) ("[S]uits to require state officials to comply with [the law] are not prohibited by sovereign immunity . . . .").

[11] *Heinrich*, 284 S.W.3d at 372.

[12] *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017) (quoting *Hous. Belt*, 487 S.W.3d at 158).

challenged actions "were not truly outside the officer's authority or in conflict with the law," then the plaintiff has not stated a valid ultra vires claim and governmental immunity will bar the suit.[13]

Mandamus seeking to compel action by a public official "falls within the *ultra vires* rationale."[14] Accordingly, writs of mandamus can issue against a public official to compel the official to perform a ministerial act.[15] "An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion."[16] But as a general rule, "a writ of mandamus will not issue to compel a public official to perform an act which involves an exercise of discretion."[17]

The Local Government Code does not create a ministerial duty to deny a nonconforming plat. To the contrary, recordable plats that are not acted upon within 30 days must be approved, even without a determination of conformity.[18] And the parties agree that the

---

[13] *Matzen v. McLane*, ___ S.W.3d ___, 2021 WL 5977218, at *4 (Tex. Dec. 17, 2021).

[14] *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 n.2 (Tex. 2011); *see City of Houston v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018) ("In cases in which the alleged *ultra vires* conduct is governmental inaction, a court may issue a writ of mandamus compelling action to bring the official into conformance with the law.").

[15] *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991).

[16] *Id.*

[17] *Id.*

[18] TEX. LOC. GOV'T CODE § 212.009(a); s*ee Howeth Invs.*, 259 S.W.3d at 899-901 (holding that the 30-day rule cannot be enforced unless the plat meets the formal recording requirements of Texas Local Government Code Chapter 212).

Commissioners exercise discretion in determining whether a plat is conforming. So under the general rule, mandamus against the Commissioners to compel denial of a plat cannot lie. But there is an exception to this rule—we have said that, "in a proper case", a writ of mandamus may issue to correct a public official's "clear abuse of discretion".[19] The Association argues that mandamus is available against the Commissioners under this exception.

As we stated in *City of El Paso v. Heinrich*, governmental immunity will not protect an officer when he "act[s] without legal authority or fail[s] to perform a purely ministerial act."[20] In *Houston Belt & Terminal Railway Co. v. City of Houston*, we clarified what it meant to act "without legal authority".[21] We explained that "governmental immunity bars suits complaining of an exercise of *absolute* discretion but not suits complaining of . . . an officer's exercise of judgment or *limited* discretion without reference to or in conflict with the constraints of the law authorizing the official to act."[22] However, "whether a suit attacking an exercise of limited discretion will be barred is dependent upon the grant of authority at issue".[23] Thus, even grants

---

[19] *Anderson*, 806 S.W.2d at 793 (citing *Womack v. Berry*, 291 S.W.2d 677, 682 (Tex. 1956); *Dykes v. City of Houston*, 406 S.W.2d 176, 183 (Tex. 1966)).

[20] 284 S.W.3d 366, 372 (Tex. 2009).

[21] 487 S.W.3d 154 (Tex. 2016).

[22] *Id.* at 163.

[23] *Id.* at 164.

7

of limited discretion "will [often] be broad enough to bar most, if not all, allegedly *ultra vires* claims."[24]

Applying this standard, we held that the plaintiff–railroads' challenge to a drainage fee could proceed as an ultra vires suit. The pleadings alleged an action by the official outside the scope of his discretion. The ordinance charged the official with "administration of [the ordinance] . . . in accordance with and subject to the provision of [the ordinance]."[25] We explained that this duty did not give the official absolute discretion to interpret the terms of the ordinance. Instead, the ordinance bound the official to apply the definitions expressly provided in the manner stated by the ordinance.[26]

We distinguished *Houston Belt* in *Hall v. McRaven*.[27] In *McRaven*, a regent of a public university sought a writ of mandamus against its chancellor to compel production of university records.[28] The chancellor had determined that federal law protected the records. The issue was whether the chancellor's discretion to interpret federal law could be challenged in court. While university rules gave the chancellor

---

[24] *Id.* (citing *Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 11 (Tex. 2015)). In *Klumb*, we held that, as a matter of law, the governmental entity acted within its broad grant of discretion to administer a pension fund and governmental immunity barred the suit. 458 S.W.3d at 10-11. However, we noted that this discretion did have its limits, and that a proper case could arise under which "a particular interpretation of the [pension-administration] statute could be *ultra vires*." *Id.* at 11.

[25] *Hous. Belt*, 487 S.W.3d at 165.

[26] *Id.* at 165-169.

[27] 508 S.W.3d 232, 241-243 (Tex. 2017).

[28] *Id.* at 237.

a duty to "determine whether a Regent may review information protected by" federal law, we distinguished this duty from the duty at issue in *Houston Belt*, which "limited [the public official's discretion] in *how* he reached a conclusion."[29] We explained that "[w]hen the ultimate and unrestrained objective of an official's duty is to interpret collateral law, a misinterpretation is not overstepping such authority; it is a compliant action even if ultimately erroneous."[30] Thus, the chancellor's discretion under university rules to interpret federal law was not subject to judicial review.[31]

The reasoning in *McRaven* governs here. Under the City's UDC, "[t]he Planning and Zoning Commission shall be responsible for considering and taking final action on . . . Preliminary Plat[s]".[32] In turn, "[n]o Preliminary Plat shall be approved without a determination [by the Commission] that the plat conforms" to UDC requirements and other law.[33] In making this determination, the only restriction on the

---

[29] *Id.* at 242.

[30] *Id.*

[31] *Id.* at 243.

[32] Georgetown, Tex., Unified Dev. Code § 2.05.010(A)(1). The parties agree that the plat must be evaluated under the UDC in place at the time that the plat was submitted in February 2017. *See* TEX. LOC. GOV'T CODE § 245.002(a)(2). Except for the provisions of Chapter 12, the UDC provisions relevant to this case have not been amended, and so we cite to the current version. Citations to Chapter 12 are to the 2017 version included in the record and noted with a date parenthetical.

[33] Georgetown, Tex., Unified Dev. Code § 3.08.070(C)(2). Because this case does not involve any alleged violation of Texas Local Government Code Section 212.009(a)'s 30-day rule, we need not address the possible conflict between that rule, which requires plat approval in the face of municipality

9

Commission's discretion is that it must "consider the Preliminary Plat application, the Director's report, State law, and compliance with this Unified Development Code".[34]

The UDC directs the Commission to determine a plat's conformity. As we have said, this determination is a discretionary one that necessarily involves "interpret[ing] and constru[ing] . . . applicable ordinances".[35] While the UDC limits the discretion of what the Commission may consider, it does not otherwise restrict the Commission's exercise of its discretion to determine conformity.[36]

The Association points to Section 12.01.040(B) in the "Pedestrian and Vehicle Circulation" chapter, which states that "[n]o subdivision shall be approved until conformance to [the relevant transportation standards] is demonstrated."[37] But this provision does not create an avenue of review. It instead reiterates that the Commission's duty is to interpret the UDC, just as the chancellor's duty in *Hall* was to interpret federal law. All that Section 12.01.040(B) requires is that "conformance [be] demonstrated" to the Commission. After reviewing and considering the proper items, the Commission determined, as a discretionary act, that the required conformance had been demonstrated in this case. This satisfied Section 12.01.040(B).

---

inaction, and this UDC provision (and others like it), which require municipal action before plat approval.

[34] *Id.* § 3.08.070(D)(1).

[35] *City of Round Rock v. Smith*, 687 S.W.2d 300, 303 (Tex. 1985).

[36] *See McRaven*, 808 S.W.3d at 242-243.

[37] Georgetown, Tex., Unified Dev. Code § 12.01.040(B) (2017).

Provided that the Commissioners fully consider the applicability of UDC requirements to a plat, the UDC commits to them the discretion to determine a plat's conformity for approval purposes. The Commissioners upheld their legal duty to "consider[] [the] . . . Preliminary Plat",[38] "determin[e] that the plat conforms" to the law,[39] and decide whether "conformance to [the applicable standards had been] demonstrated."[40] After concluding that the plat conformed, the Commissioners approved it—as required by statute. Even if incorrect in their conclusion, the Commissioners did not exceed the scope of their authority.[41] The Association does not allege that the Commissioners made the conformity determination based on improper considerations.[42] Instead, the Association asserts that the Commissioners simply got the determination wrong. Neither the UDC

---

[38] *Id.* § 2.05.010(A)(1).

[39] *Id.* § 3.08.070(C)(2).

[40] *Id.* § 12.01.040(B) (2017).

[41] *See McRaven*, 508 S.W.3d at 242.

[42] In any event, the record before us establishes that the Commission considered the director's report (which determined that all UDC requirements were met), recognized its ministerial duty under State law to approve a conforming plat, and addressed the specific compliance concerns raised by Escalera Ranch. Accordingly, we do not give the Association an opportunity to replead its claim. *See Von Dohlen v. City of San Antonio*, 643 S.W.3d 387, 397 (Tex. 2022) ("Texas courts allow parties to replead unless their pleadings demonstrate incurable defects.").

11

nor State law allow third parties to second-guess the Commission's decision in this way.[43]

The platting process is intended to be an expeditious one that favors approval. The Legislature created a ministerial duty to approve a conforming plat, with no reciprocal duty to deny a nonconforming one. If a municipal planning and zoning commission wants to deny a plat for nonconformance, it has only thirty days to do so.[44] After that, the plat is generally approved—even if nonconforming.[45] And unlike the related field of zoning, where the Legislature has statutorily approved suits by a broad swath of plaintiffs to challenge allegedly improper zoning decisions,[46] the Legislature has not created a mechanism for third parties to seek judicial review of a municipality's platting approval.

---

[43] Our decision today does not impact an appropriate party's ability to challenge an allegedly improper denial of a plat. In that case, there is a ministerial duty to approve all conforming plats—not just plats that the responsible authority determines are conforming. TEX. LOC. GOV'T CODE § 212.005 ("The municipal authority responsible for approving plats must approve a plat . . . that satisfies all applicable regulations."); *id.* § 212.010 (stating that "[t]he municipal authority responsible for approving plats shall approve a plat" that conforms to municipal rules and other law). A recent amendment bolsters this right. *Id.* § 212.0099 (setting out a municipality's burden for supporting a disapproval "[i]n a legal action challenging a disapproval of a . . . plat"). As discussed, there is no corresponding duty under State law to deny a plat that does not conform.

[44] *Id.* § 212.009(a)-(b).

[45] *Id.*; s*ee Howeth Invs.*, 259 S.W.3d at 899-901.

[46] TEX. LOC. GOV'T CODE § 211.011(a) (allowing "a person aggrieved by a decision of the [board of adjustment]; a taxpayer; or an officer, department, board, or bureau of the municipality" to seek judicial review of a zoning decision by filing a petition "stating that the decision of the board of adjustment is illegal in whole or in part").

Providing one against the Commissioners in this case would undercut both our well-established limitations on ultra vires suits and the Legislature's plain preference for speedy platting decisions.[47]

The Commissioners are duty-bound to interpret the UDC, consider certain listed items, and determine whether a plat conforms to the standards in the UDC. Because the Commissioners adhered to this duty in determining that the Patience Ranch preliminary plat conformed to the applicable standards, the trial court lacked jurisdiction to compel a contrary determination by mandamus.[48]

\*　　　\*　　　\*　　　\*　　　\*

We reverse the judgment of the court of appeals and dismiss the Association's claims for lack of jurisdiction.

Nathan L. Hecht
Chief Justice

**OPINION DELIVERED:** June 3, 2022

---

[47] Of course, this does not foreclose the Association from successfully pursuing any cause of action that may arise against the developer in the future, perhaps based on the same fears of road damage or fire hazards that this suit revolved around.

[48] Because we conclude that governmental immunity bars the Association's suit, we do not reach whether the Association had standing to challenge the plat's approval.