

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

## No. 08-24-00359-CV

---

Ranches at Hamilton Pool Homeowners Association, Inc., Appellant

v.

Red Eagle RH, LP, Appellee

---

On Appeal from the 459th District Court
Travis County, Texas
Trial Court No. D-1-GN-23-007680

---

## MEMORANDUM OPINION[1]

This appeal arises from a dispute between Appellant Ranches at Hamilton Pool

Homeowners Association, Inc. (HOA) and Appellee Red Eagle RH, LP (Red Eagle) over Red

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Third Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

Eagle's right to use a private road abutting its lots for ingress and egress to a public road. The HOA challenges a declaratory judgment entered in favor of Red Eagle. We affirm.

## I. BACKGROUND

The Ranches at Hamilton Pool (Subdivision) is a large-acre ranch subdivision located in both Travis County and Hays County. The Subdivision was developed in two phases by the original developer, Coldwater Development, Ltd. (Coldwater), which platted both phases. The first phase (Ranches Phase One) is situated in Travis County while the second phase (Ranches Phase Two) lies in Hays County, where its plat (Ranches Phase Two Plat) was recorded in 2006.

Red Eagle owns Lots 26, 27, 28, and 29 (Subject Tract) of the Subdivision. Each lot ranges in size from 80 to 120 acres and together they total about 400 acres. Because the Subject Tract is located at the back end of the Subdivision in Ranches Phase Two, access to the Subject Tract requires crossing most of the Subdivision. The only roadway providing access from the Subject Tract to a public road is Grand Summit Boulevard, a private road within the Subdivision. As depicted on the Ranches Phase Two Plat below, Grand Summit Boulevard runs from Hamilton Pool Road, a public road, through both phases of the Subdivision, and ends at a cul-de-sac bordering the Subject Tract.[2]

---

[2] The Ranches Phase Two Plat, Plaintiff's Exhibit 2, was admitted at trial without objection.



The below image, included in the Ranches Phase Two Plat, further illustrates the respective locations of Hamilton Pool Road, the Subject Tract, and Grand Summit Boulevard.[3]



[3] This image is included in the Ranches Phase Two Plat, Plaintiff's Exhibit 2, which was admitted at trial without objection.

In 2006, the HOA was established through the Amended and Restated Declaration of Covenants, Conditions and Restrictions for the Ranches at Hamilton Pool (the Declaration). The HOA is responsible for maintaining roadways and other common areas, enforcing land-use restrictions, and levying assessments against members, among other things. The Subject Tract, however, was expressly excluded from the Declaration's restrictive covenants and is not subject to HOA membership or governance.

Coldwater sold the Subject Tract to CM4H Investments, LP (CM4H) in January 2014. The deed conveyed the Subject Tract with reference to the Ranches Phase Two Plat and included all of Coldwater's "right, title, and interest in and to . . . street and drainage facilities[,]" as well as "all appurtenances benefiting or pertaining to the Land[,]" including "all streets, alleys, rights-of-way, or easements adjacent to or benefiting the Land, and all strips or pieces of land abutting, bounding, or adjacent to the Land." As part of the sale, Coldwater and CM4H also executed the Access Easement and Private Street Payment Agreement (the Agreement). The Agreement grants an "Easement Tract" and defines it with a reference to Lot 30 and the Ranches Phase Two Plat. The Agreement also provides that the owners of the Subject Tract would pay an annual road maintenance fee of $500 to the HOA per lot. As shown below, at the time of CM4H's purchase of the Subject Tract, marketing materials for the Subdivision represented Grand Summit Boulevard as the access route from the Subject Tract to Hamilton Pool Road.[4]

---

[4] The marketing map of the Subdivision, Plaintiff's Exhibit 25, was admitted at trial without objection.



Approximately one year later, Coldwater conveyed to the HOA the Subject Tract that comprise Grand Summit Boulevard—Lots 1A and 30. CM4H subsequently sold the Subject Tract to Rutherford RH, L.P. (Rutherford) in 2015, and Rutherford sold it to Red Eagle in 2016. All conveyances contained the same references to the Ranches Phase Two Plat and the same grant language quoted above. For over six years following the 2014 purchase from Coldwater, Red Eagle and its predecessors used the entirety of Grand Summitt Boulevard without complaint.

The present dispute arose in March 2020, when the HOA made a formal demand on Red Eagle. The HOA claimed that the Agreement was "the only controlling easement document that grants access to the Association's roads" and that it applied only to the portion of "Grand Summit Boulevard situated on Lot 30 in Phase Two"—the Hays County portion. The HOA alleged that Red Eagle's use of the Travis County portion of Grand Summit Boulevard constituted trespass and demanded that Red Eagle cease all ingress and egress across that portion of the roadway.

In October 2023, Red Eagle filed suit against the HOA seeking a declaration that it holds a common law easement over the entirety of Grand Summit Boulevard from Hamilton Pool Road to the Subject Tract. A bench trial was held in May 2024. The trial court granted Red Eagle's

request for declaratory relief, declaring that Red Eagle has a "permanent, private, and appurtenant easement over the entirety of . . . Grand Summit Boulevard, which is described as Lot 30 . . . and Lot 1A . . . [and] such easement is for ingress and egress to and from the [Subject Tract]." The trial court entered its findings of fact and conclusions of law in support of its final judgment. This appeal followed.

## II. DISCUSSION

In a single issue, the HOA contends the trial court erred in granting a declaratory judgment in favor of Red Eagle. In support of its contention, the HOA advances two arguments. First, the HOA maintains that recording an interest in real estate in one county cannot convey an interest in real estate in another county.[5] Second, the HOA argues the trial court erred in finding that:

(a) CM4H's purchase of the [Subject Tract] with reference to the Ranches Phase Two Plat, in Hays County included an easement over Grand Summit Boulevard in Travis County and (b) that the Access Easement and Private Street Payment Agreement does not negate or limit the alleged common law easement; (c) Coldwater's conveyance to CM4H of the [Subject Tract], which were recorded in Hays County, included access to Grand Summit Road, a private road located in Travis County.

Because these arguments overlap, we reorganize and restate them for ease of analysis, as follows: (1) whether the conveyance of the Subject Tract to CM4H in Hays County included an easement over Grand Summit Boulevard in Travis County, and (2) whether the Agreement negates or limits the easement over Grand Summit Boulevard.

### A. Standard of review and applicable law

Declaratory judgments are reviewed under the same standards as other judgments and decrees. *Roberts v. Squyres*, 4 S.W.3d 485, 488 (Tex. App.—Beaumont 1999, no pet.). On review of a bench trial, appellate courts defer to the trial court's findings of fact and review conclusions

---

[5] Although the HOA lodges this argument, it provides no authority for this argument and has therefore waived it. *See* Tex. R. App. P. 38.1 (providing briefing requirements).

of law de novo. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020). "[B]ecause a general complaint against the trial court's judgment does not present a justiciable question[,]" appeals from a bench trial require challenges to specific findings and conclusions of law. *Carrasco v. Stewart*, 224 S.W.3d 363, 366–67 (Tex. App.—El Paso 2006, no pet.). Accordingly, "[i]f the appellant does not challenge the trial court's findings of fact, these facts are binding upon both the party and the appellate court." *Id.*

The HOA does not articulate its point of error as raising a legal or factual sufficiency challenge to the trial court's findings, and its brief does not identify the applicable standard of review. We therefore construe the HOA's point of error as raising only a "no evidence" challenge to the relevant findings. *Id.* A "no evidence" or legal sufficiency point of error is a question of law that challenges the legal sufficiency of the evidence to support a particular fact finding. *Id.* "When the party without the burden of proof suffers an unfavorable finding, the challenge on appeal is one of no evidence to support the finding." *Id.* (cleaned up). A legal sufficiency challenge will be sustained when there is:

> (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact.

*City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In conducting our review, we view the evidence in the light favorable to the verdict, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *Id.* at 827. We are also mindful that the factfinder is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819. So long as the evidence falls within this zone of reasonable disagreement, we may not substitute our judgment for that of the factfinder. *Id.* at 822.

7

The ultimate test in a legal sufficiency review is whether the evidence would enable reasonable and fair-minded people to reach the verdict under review. *Id*. at 827.

"An easement is a nonpossessory interest in real property that authorizes its holder to use another's property for a particular purpose." *Albert v. Fort Worth & W. R.R. Co.*, 690 S.W.3d 92, 97 (Tex. 2024). An easement appurtenant is one that attaches to the land itself and conveys to the dominant estate; "they run with the land until terminated." *Id*. at 97–98. Once an easement appurtenant is established, "it allows the successors in interest to the dominant estate to continue crossing the servient estate along the established way." *Id*. at 98. And as the Texas Supreme Court has established, "when [a person] purchased their lots with reference to the subdivision plat, they immediately acquired private rights of easement over the streets shown on such plat as abutting their land[.]" *Dykes v. City of Houston*, 406 S.W.2d 176, 181 (Tex. 1966).

### B. Analysis

#### (1) The 2014 conveyance

The HOA first argues that the trial court erred in finding that Coldwater's 2014 conveyance of the Subject Tract to CM4H included an easement over Grand Summit Boulevard in Travis County. Specifically, the HOA disputes that "Coldwater's conveyance to [CM4H] of the [Subject Tract], which [was] recorded in Hays County, included access to Grand Summit[,]" and that "[CM4H]'s purchase of the [Subject Tract] with reference to the Ranches Phase Two Plat, in Hays County included an easement over Grand Summit Boulevard in Travis County." These arguments, however, ignore established Texas precedent.

In Texas, "[t]he sale and conveyance of lots . . . according to [a] plan . . . impl[ies] a grant or covenant to the purchasers that streets indicated on the plan shall be forever open to the use of the public, free from all claim or interference of the proprietor, inconsistent with such use." *Keenan*

8

*v. Robin*, 709 S.W.3d 595, 602 (Tex. 2024) (cleaned up). Purchasers therefore "acquire an easement in the land designated as an alley or street," which "attaches immediately upon [their] purchase of the property." *Id.* (citing *Dykes*, 406 S.W.2d at 181). It also follows that such purchasers "immediately acquire[] private rights of easement over the streets shown on such plat as abutting their land[.]" *Dykes*, 406 S.W.2d at 181.

Prior to the 2014 conveyance, Coldwater owned both phases of the Subdivision, including Lots 1A and 30—the roadway lots for Grand Summit Boulevard. In 2014, Coldwater conveyed the Subject Tract to CM4H by a deed that specifically referenced the recorded Ranches Phase Two Plat. That deed provided Coldwater had granted, sold, and conveyed to CM4H the following described property:

> Lots Twenty-Six (26), Twenty-Seven (27), Twenty-Eight (28) and Twenty-Nine (29), THE RANCHES AT HAMILTON POOL, PHASE TWO, HAYS COUNTY, TEXAS, *according to the map or plat thereof recorded in Volume 13, Page 143, of the Map and or Plat of Records of Hays County, Texas*, together with all of [Coldwater's] right title and interest in and to oil, gas, and other minerals in or under the surface thereof, and all of [Coldwater's] right, title and interest in and to all executory leasing rights with respect thereto ("Land") (emphasis added)[.]

As shown on the Ranches Phase Two Plat, Grand Summit Boulevard runs from Hamilton Pool Road, through both phases, to the Subject Tract. Grand Summit is the only road depicted that connects the Subject Tract to the public road. The deed also conveyed Coldwater's "right, title and interest in and to . . . street and drainage facilities" and "[a]ll appurtenances benefiting or pertaining to the Land[,] . . . including without limitation, all of [Coldwater's] right, title, and interest in and to all streets, alleys, rights-of-way, or easements adjacent to or benefiting the Land, and all strips or pieces of land abutting, bounding, or adjacent to the Land[.]" The subsequent conveyances from CM4H to Rutherford, and from Rutherford to Red Eagle, contained the same references and appurtenance language. That language, coupled with the express reference to the Ranches

9

Phase Two Plat, conveyed to purchasers, including Red Eagle, a private easement to use Grand Summit Boulevard.

Texas has long recognized that a conveyance of land that references a recorded plat that shows an abutting road operates to grant a private easement. The Texas Supreme Court has "consistently held that the conveyance of land by reference to a map or plat, upon which lots and streets are laid out, results in the purchaser or one holding under him, acquiring by implication a private easement in the alleys or streets shown on the plat." *City of San Antonio v. Olivares*, 505 S.W.2d 526, 530 (Tex. 1974). "Texas courts have generally recognized that abutting property owners have private rights in existing streets and alleys[.] This right is in effect a private right of ingress and egress. It is a right of passageway to and from the property." *Id.* The HOA contends that the Ranches Phase Two Plat cannot create an easement in Travis County because it does not depict the entire length of Grand Summit Boulevard. But courts have rejected such a restrictive view. *See Anderson v. McRae*, 495 S.W.2d 351, 359 (Tex. App.—Texarkana 1973, no writ).

In *Anderson*, the appellant argued that because certain roadways and recreational areas were not completely contained in the plats and not described in detail by metes and bounds, "the trial court erred in finding that they were 'designated' by the plats and became a part of the description when lots were sold by reference to the plats[.]" *Id*. The Texarkana Court of Appeals rejected appellant's argument and explained:

> It is clear from the plats that the intention was to include the roadways and recreational areas and the lake front as appurtenant to the subdivided lots, and the trial court had evidence to support its finding that such areas had been 'designated' on such plats. As to the areas becoming a part of the description of the lots when the sellers executed deeds to the lots describing them by reference to the plats, it is well settled that when subdivided lots are conveyed by reference to a recorded plat, the matters contained in the plat become a part of the deed by incorporation by reference.

10

*Id*. We agree and likewise reject the HOA's argument. *See id.*; *see also Street v. Chance*, No. 02-18-00409-CV, 2019 WL 2293185, at *7 (Tex. App.—Fort Worth May 30, 2019, no pet.) (mem. op.) ("[W]hen a person purchases a lot with reference to a subdivision plat, he or she immediately acquires private rights of easement over the streets shown on such plat as abutting the purchased lot, whether or not such streets are ever accepted or opened by the public.").

Because each conveyance in the chain of title referenced the recorded plat that showed the abutting Grand Summitt Boulevard, Red Eagle acquired a private easement over the entirety of Grand Summit Boulevard. *See Braun v. Braun*, No. 04-09-00486-CV, 2010 WL 2513428, at *5 (Tex. App.—San Antonio June 23, 2010, pet. denied) (mem. op.) ("A party may assert that they have a private easement over a roadway if they can prove a conveyance of land makes reference to a map or plat that shows abutting roads."); *Anderson*, 495 S.W.2d at 359 ("[I]t is well settled that when subdivided lots are conveyed by reference to a recorded plat, the matters contained in the plat become a part of the deed by incorporation by reference . . . the conveyance of each lot with reference to the map is a conveyance of all of the appurtenances ascertainable by the map." (cleaned up)).

### (2) The Agreement

As an additional argument, the HOA maintains that Coldwater did not intend to convey the Travis County portion of Grand Summit Boulevard. According to the HOA, "a contrary intention is expressed in plain and unequivocal terms and negat[es] any alleged appurtenant/implied easements." The HOA points to the Agreement, contending that because it "specifically grants the [Subject Tract] an easement over Lot 30 in Hay[]s County[,]" it "clearly and unequivocally stated that the only easement the [Subject Tract] enjoyed was through Lot 30, in Hays County." In the HOA's view, the omission of Lot 1A (the portion of Grand Summit Boulevard in Travis County)

11

demonstrates Coldwater's intention, and "[h]ad Coldwater intended to grant an easement over Lot [1A], in Travis County, as well, it would have done so." Red Eagle responds that nothing in the Agreement is inconsistent with its common law easement over the entirety of Grand Summit Boulevard. We agree and find that the Agreement does not negate Red Eagle's common law easement.

In the Agreement, the granted "Easement Tract" is defined by references to both Lot 30 and the Ranches Phase Two Plat, which depicts the entirety of Grand Summitt Boulevard. Texas courts have held that an express easement does not necessarily foreclose a separate common law claim. *See, e.g.*, *Wiatrek v. Shimek*, No. 13-15-00604-CV, 2017 WL 2290158, at *6 (Tex. App.— Corpus Christi May 25, 2017, no pet.) (mem. op.) ("Under the facts of this case, we hold that [appellant's] ownership of an express easement which now affords him adequate access to his land does not make an easement by estoppel unavailable.").

Red Eagle further notes that the Agreement required payment of road maintenance fees. The Agreement specifically states that these fees were for "roadway maintenance expenses, landscaping expenses, maintenance expenses incurred in connection with security gates, guard houses, and other appurtenant features, security guard expenses (if any), and other similar or related expenses determined by the HOA." This is relevant because the security gate of the Subdivision is located on the Travis County portion of Grand Summit near the Hamilton Pool Road entrance. According to Red Eagle, it and its predecessors have collectively paid $24,000 toward the maintenance of Grand Summit Boulevard and related improvements such as the security gate, including those located in Travis County. Red Eagle contends that "[i]t would be an absurd application of Red Eagle's easement rights to require that it fund roadway improvements located on the Travis County portion of Grand Summit but prohibit it from using those

12

improvements and that section of the roadway." We agree and conclude that the Agreement does not negate Red Eagle's easement over the entirety of Grand Summit Boulevard.

The conduct of the parties further supports this conclusion. At trial, Rebecca Baxter testified on behalf of Red Eagle. Baxter participated as the lender in the 2014 and subsequent conveyances, and lived on the Subject Tract. Red Eagle emphasizes that "[s]ince CM4H's purchase of the [Subject Tract] in 2014, Baxter and her family members have regularly used the entirety of Grand Summit to access the [Subject Tract] from Hamilton Pool Road" and that until March 2020, they heard no complaints about their use from either Coldwater or the HOA. Baxter confirmed this at trial, testifying that she and her family used the entirety of Grand Summit Boulevard from Grand Hamilton Pool Road to the Subject Tract without complaint until March 2020.

Other testimony also established that since the installation of the security gate, both Coldwater and the HOA provided Red Eagle and its predecessors with access codes to use the gate and thereby the entirety of Grand Summit Boulevard. That access continued after the HOA's 2020 cease-and-desist letter and through trial. Red Eagle also points to its designated mailboxes, which are located on the Travis County portion of Grand Summit Boulevard, as further evidence of Coldwater's intent that the owners of the Subject Tract have full use of Grand Summit Boulevard. We agree with Red Eagle that "[a]ll of this supports a practical and common sense recognition that Red Eagle has an easement to use the entirety of Grand Summit[.]"

Accordingly, neither the Agreement, nor the parties' conduct, establishes a contrary intention that negates or limits Red Eagle's private easement over the entirety of Grand Summit Boulevard.

Appellant's sole issue is overruled.

13

## III.  CONCLUSION

For these reasons, we affirm.

MARIA SALAS MENDOZA, Chief Justice

September 18, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.